IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH HAIRSTON, )<br>      Petitioner, )<br>)<br>v. )<br>)<br>JEFFREY BEARD, et al., )<br>      Respondents. )<br>) | Civil Action No. 2:10-1119<br><br>District Judge Nora Barry Fischer |

## MEMORANDUM OPINION

Pending before the Court is Petitioner Kenneth Hairston's Motion For Extension Of Time To File a Petition For Writ Of Habeas Corpus [ECF No. 10]. Also before the Court is Hairston's Response, and Supplement thereto, to an Order from this Court directing him to show cause why this case should not be dismissed without prejudice while he exhausts his state court remedies [ECF Nos. 12 & 16], and the Commonwealth's Reply [ECF No. 17]. For the reasons set forth below, the Court will deny Hairston's motion for an extension and dismiss this case without prejudice.

**I.**

On July 11, 2002, Hairston was sentenced to death in the Court of Common Pleas of Allegheny County following his conviction on two counts of first-degree murder in the killing of his wife and teenage son. The Pennsylvania Supreme Court affirmed his judgment of sentence on December 28, 2009. Commonwealth v. Hairston, 985 A.2d 804 (Pa. 2009). He raised the following four issues in that appeal:

> (1) Were Appellant's state and federal constitutional rights to due process and against cruel punishments, as well as his right to a trial held in accordance with the Pennsylvania Rules of Evidence, violated when the prosecution was permitted to introduce, during Appellant's homicide trial, evidence revealing both the fact that Appellant was charged with the attempted gunpoint rape of his stepdaughter plus details regarding that incident?

1

> (2) Were Appellant's state and federal constitutional rights to due process and against cruel punishments violated when he was convicted of First Degree Premeditated Murder by a jury that was erroneously deprived of the opportunity to instead convict him of the lesser offense of Second Degree Felony Murder?
>
> (3) Were Appellant's state and federal constitutional rights to effective counsel, to due process, and against cruel punishment violated when current counsel ineffectively failed to assert, in both the Pa.R.Crim.P. 811 post-sentence motion and in the Pa.R.App.P.1925 concise statement that he filed on Appellant's behalf, the claim that trial counsel ineffectively failed to object to the prosecutor's inflammatory, misleading, and otherwise prejudicially improper penalty phase closing argument?
>
> (4) Were Appellant's state and federal constitutional rights to due process and against cruel punishment, as well as his right to be sentenced in accordance with 42 Pa.C.S. § 9711, violated when the prosecution was permitted to present victim impact testimony from two non-family members, including one who testified about the impact that the decedents' deaths had on him?

Hairston, 985 A.2d at 808 (quoting Appellant's Brief).

In disposing of these claims, the Pennsylvania Supreme Court explained: "[Hairston] failed to file either post-sentence motions or an appeal until after the window for each had closed, and [he] never requested that the trial court reinstate his appeal rights *nunc pro tunc*. Consequently, … [Hairston] has waived the individual claims he brings before this Court, and the case is now before us under the limited scope of our automatic review." Id. at 805. See also id. at 808-09. It observed that Hairston's "claims may be pursued under [Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*.], as claims sounding in trial counsel's ineffectiveness or, if applicable, a statutory exception to the PCRA's waiver provision." Id. at 808 n.6 (internal citations and quotations omitted).

The Pennsylvania Supreme Court conducted the automatic review required by 42 Pa.C.S. § 9211(h), and determined that there was sufficient evidence to sustain Hairston's first-degree murder convictions, the evidence supported the finding of at least one aggravating circumstance, and the sentence of death was not the product of passion, prejudice or any other arbitrary factor. Id. at 809. On May 17, 2010, the United States Supreme Court denied Hairston's petition for writ of certiorari.

Hairston v. Pennsylvania, 130 S.Ct. 3295 (2010). Accordingly, his judgment of sentence became final on that date. Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (a judgment of sentence becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On or around August 24, 2010, Hairston, through counsel with the Federal Public Defender's Office, commenced this habeas action by filing motions to appoint counsel, to proceed *in forma pauperis*, and for a stay of execution. The Court granted those motions and issued an Order directing Hairston to file his petition for a writ of habeas corpus under 28 U.S.C. § 2254 on or before December 24, 2010. [ECF No. 2].

When the due date for his petition arrived, Hairston filed his first motion for an extension, which the Court granted. [ECF Nos. 8-9]. When the revised due date approached, he filed a second motion for an extension, which is now pending before the Court. [ECF No. 10]. In that motion, he noted that on February 1, 2011, he had filed in the Court of Common Pleas of Allegheny County a PCRA petition.

Because Hairston was pursuing a PCRA case in state court, this Court issued an Order directing him to show cause why this federal habeas action should not be dismissed without prejudice pending exhaustion of his state court remedies. [ECF No. 11]. Hairston filed a Response To Order To Show Cause [ECF No. 12], and requested that the Court hold a status conference so that counsel could outline why the case should not be dismissed without prejudice. A status conference was held, and Hairston subsequently filed a Supplemental Response [ECF No. 16] and the Commonwealth filed its Reply [ECF No. 17]. The Commonwealth maintains that this case should be dismissed without prejudice.

During the status conference and through the parties' subsequent filings, the Court has learned the following. On November 13, 2009, while his direct appeal was still pending before the Pennsylvania Supreme Court, Hairston filed a *pro se* PCRA petition. Judge Manning, who presided over Hairston's trial, also presides over the PCRA proceedings. He appointed Michael J. Healey, Esq., to represent

3

Hairston. On February 1, 2011, Hairston, through Healey, filed an amended PCRA petition in which he alleges that he was denied effective assistance of counsel on direct appeal due to appellate counsel's failure to perfect an appeal by filing either a timely notice of appeal or a timely post-sentence motion. As relief, Hairston requests that his direct appeal rights be reinstated *nunc pro tunc*. On May 6, 2011, the Commonwealth filed an Answer to the amended PCRA petition. Its position is that because Hairston can litigate through ineffective assistance of counsel claims the underlying substantive claims in which he challenges his convictions and capital sentence, he does need to have his direct appeal rights reinstated *nunc pro tunc*. Hairston, through Healey, filed a response to the Commonwealth's Answer on May 25, 2011.

The Court of Common Pleas' docket, of which this Court takes judicial notice, shows that Judge Manning has not yet ruled on the matter. Nevertheless, as the Commonwealth explains, Hairston's PCRA case likely will proceed in one of two ways: (1) his direct appeal rights will be reinstated *nunc pro tunc*; or, (2) he will be permitted to pursue challenges to his convictions and capital sentence in the PCRA case. Whatever occurs, it cannot be disputed that at the present time Hairston is still in the process of exhausting his state court remedies.

**II.**

A federal habeas petitioner must complete the exhaustion of his available state court remedies before a federal district court may determine the merits of his or her habeas corpus claims. The exhaustion requirement is codified at 28 U.S.C. § 2254(b)(1)(A), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State[.]

28 U.S.C. § 2254(b)(1)(A). The statute further provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan v. Boerckel, 526 U.S. 838, 842-49 (1999). The requirement is:

> principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted). "[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." Coleman, 501 U.S. at 731 (citing Ex parte Royall, 117 U.S. 241; Lundy, 455 U.S. 509; Castille v. Peoples, 489 U.S. 346 (1989); and 28 U.S.C. § 2254(b)).

Under the circumstances presented here, the Court must dismiss this case without prejudice. See, e.g., Lundy, 455 U.S. at 515-22. Hairston argues that the Court should not do so because his

5

federal habeas counsel must investigate his potential habeas claims. He asserts that his counsel needs to interview family members and other individuals who reside in Virginia and North Carolina, as well as gather records regarding his childhood and schooling. He contends that counsel must continue their work on his federal habeas case because individuals may be unavailable in the future and records may be destroyed. When asked for specifics about this at the status conference, however, Hairston's counsel acknowledged that very little, if indeed any, such investigation had been conducted since their appointment as federal habeas counsel. In any event, this argument alone would not justify keeping this case open for years while Hairston at the same time litigates challenges to his convictions and capital sentence in state court. If he receives the relief he seeks in state court, the pursuit of federal habeas relief will be unnecessary. This Court will not leave this case open indefinitely so that his counsel can work on federal habeas claims that will not need to be ruled upon in the event he receives relief in state court. And although Hairston's state case is proceeding at an appropriate pace, it likely will take several years to be finally resolved. There is no reason to have his federal habeas counsel continue to work on a federal petition that, in the event that relief in state court is denied, will not be ripe for review by this Court for years.

Hairston argues that, rather than dismissing this case, the Court should stay it during the pendency of his state proceedings. District courts have the authority to stay and abey federal habeas cases in accordance with <u>Rhines v. Weber</u>, 544 U.S. 269 (2005). The practice of staying and abeying federal habeas cases is a development necessitated by the interaction of the one-year statute of limitations enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), and the pre-AEDPA rule set forth in <u>Lundy</u> that required that federal courts dismiss without prejudice habeas petitions that contain unexhausted claims. <u>Rhines</u>, 544 U.S. at 275 ("As a result of the interplay between AEDPA's 1-year statute of limitations and <u>Lundy</u>'s dismissal

requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims."); see also Heleva v. Brooks, 581 F.3d 187, 189-90 (3d Cir. 2009). In Rhines, the United States Supreme Court held that in order to avoid predicaments that may arise in attempting to comply with AEDPA's statute of limitations while at the same time exhausting claims in state court, a state prisoner may file a "protective" habeas petition in federal court and ask the district court to stay and abey the federal habeas proceeding until state remedies are exhausted. 544 U.S. at 276-78.

Rhines is not applicable to this case. Hairston has not established that, as of this point in time, he may have an issue complying with AEDPA's statute of limitations. That limitations period began to run on the date his judgment of sentence becomes final by the conclusion of direct review, which was on May 17, 2010. 28 U.S.C. § 2244(d)(1)(A); Swartz, 204 F.3d at 419. However, it appears that Hairston's PCRA case was pending on that date, and therefore AEDPA's limitation period was immediately tolled pursuant to 28 U.S.C. § 2244(d)(2), and it will continue to be tolled during the pendency of his PCRA proceeding.[1] Thus, as the Commonwealth explains, "the proverbial 'clock' *has not even begun* to 'tick' for his federal habeas proceedings. As such, there is no need or purpose for a 'protective' habeas petition." Commonwealth's Reply, ¶ 20 (emphasis in original). Moreover, if the state court reinstates Hairston's direct appeal rights *nunc pro tunc*, his judgment of sentence will not become final for the purposes of calculating the start date of AEDPA's statute of limitations until *that direct appeal* has become final. Jimenez v. Quarterman, 555 U.S. 113, 118-21 (2009) (where a state court grants a criminal defendant the right to file an out-of-time direct appeal, his conviction is not "final" under

---

[1] Section 2244(d)(2) provides that AEDPA's limitations period is immediately statutorily tolled during the entire pendency of a "properly filed" application for state post-conviction relief. See also Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005). At the status conference and in its Reply, the Commonwealth acknowledged that Hairston's PCRA petition was timely filed and that it has tolled AEDPA's statute of limitations pursuant to § 2244(d)(2). Commonwealth's Reply, ¶ 20.

AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(1)(A), until the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking certiorari review of that appeal).

Based upon all of the foregoing, the Court will deny Petitioner's Motion For Extension Of Time To File a Petition For Writ Of Habeas Corpus [ECF No. 10] and dismiss this case without prejudice. Accord Crispell v. Wetzel et al., No. 3:11-cv-168, slip op. (W.D. Pa. Sept. 19, 2011) (Cercone, J.); Baumhammers v. Wetzel et al., No. 2:11-cv-258, slip op. (W.D. Pa. Mar. 3, 2011) (McLaughlin, J.); VanDivner v. Beard et al., No. 2:10-cv-866, slip op. (W.D. Pa. Jan. 3, 2011) (Gibson, J.); Mitchell v. Beard et al., No. 2:07-cv-144, slip op. (W.D. Pa. Feb. 22, 2008) (McLaughlin, J.); Treiber v. Beard et al., 1:06-cv-89, slip op. (W.D. Pa. July 6, 2007) (Gibson, J.).

An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Court Judge
Western District of Pennsylvania

Date: October 28, 2011

cc/ecf: All counsel of record.